38 C.C.P.A.(Patents)

## In re EGER et al.
## Patent Appeals No. 5707.

United States Court of Customs and Patent Appeals.

June 30, 1950.

Rehearing Denied Sept. 29, 1950.

Arnold S. Worfolk, New York City (Edmund H. Parry, Jr., Washington, D. C., of counsel), for appellants.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON and WORLEY, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner denying, as unpatentable over prior art cited, four claims, numbered respectively 16, 17, 18, and 19, of appellants' patent application entitled "For Butadiene Copolymer Impregnated Sheet." Two claims, numbered respectively 14 and 15, were allowed by the Primary Examiner. All the appealed claims and both of the allowed claims are product claims.

We quote the following descriptive matter from the decision of the board:

"The claims are directed to a flexible fibrous sheet of web, such as paper, which has been impregnated with an unvulcanized copolymer of butadiene with styrene, acrylonitrile, isobutylene, or methacrylates, which are generally known synthetic rubbers, and (claim 19) to a pressure sensitive tape comprising a backing of such sheet and a pressure sensitive adhesive united thereto. The particular points of novelty urged by appellants as patentable distinctions reside in the use of a butadiene copolymer wherein the copolymerizing agent such as styrene is present to the extent of 35% to 70% of the weight of the copolymer, and in saturating the fibrous web with such copolymer to the extent of 40% to 60% of the weight of the web."

The appealed claims read:

"16. A flexible sheet characterized by high tensile strength and great resistance to splitting and to delamination, said sheet comprising a porous fibrous web internally bonded by an agent which is present in the web to the extent of 40 to 60% of its weight and which includes an unvulcanized copolymer of butadiene and styrene present to the extent of 35 to 70% of the weight of the copolymer."

"17. A flexible sheet characterized by high tensile strength and great resistence to splitting and to delamination, said sheet comprising a porous fibrous web internally bonded by an agent which is present in the web to the extent of 40 to 60% of its weight and which includes an unvulcanized copolymer of butadiene and an initially unsaturated compound present to the extent of 35 to 70% of the weight of the copolymer and selected from the group consisting of styrene, the unsaturated nitriles, isobuylenes, and the methacrylates, the particles of said copolymer being predominantly less than 4 microns in diameter.

"18. A flexible sheet characterized by high tensile strength and great resistance to splitting and to delamination, said sheet comprising a porous fibrous web internally bonded by an agent which is present in the web to the extent of 40 to 60% of its weight and which includes an unvulcanized copolymer of butadiene and an initially unsaturated compound present to the extent of 35 to 70% of the weight of the copolymer and selected from the group consisting of styrene, the unsaturated nitriles, isobuylenes, and the methacrylates.

"19. A pressure-sensitive adhesive tape comprising a backing made of sheet mate-

rial according to claim 18 and a pressure-sensitive adhesive united thereto."

The following references were cited and discussed by both tribunals of the Patent Office: Konrad et al., 2,335,124, Nov. 23, 1943; Fowler, 2,351,498, June 13, 1944; Paper Trade Journal, Nov. 5, 1942, pp. 29–32; Kautschuk Gesellschaft (French patent), 838,906, Mar. 20, 1939.

The French patent and the patent to Fowler are characterized in the brief of the Solicitor for the Patent Office as "only cumulative" on the question of whether it is broadly old to impregnate fibrous material with a dispersion of a butadiene-styrene copolymer, and it is said in the brief: " * * * if the Court should consider the appealed claims patentable over the Paper Trade Journal article and Konrad et al., taken singly or in combination, it would necessarily follow that the claims would be patentable over Fowler and the French patent."

We think the position so taken by the Solicitor for the Patent Office is sound and, therefore, we limit our consideration to the Konrad et al. patent, upon which all the appealed claims were rejected, and to the disclosure in the Paper Trade Journal.

█ There is no contention that any one of the appealed claims contains any limitation which differentiates it patentably from any other appealed claim. So, the four stand or fall together.

Claim 18 appears to be the broadest of the appealed claims. Claim 19 identifies, or names, the product as a pressure-sensitive adhesive tape. In the specification it is said, *inter alia:* " * * * it is manifest that there has been produced a sheet having many applications which hitherto were barred to the use of internally bonded, fibrous, non-hygroscopic sheets. For instance, in the form of a backing for normally adhesive tapes and in other forms as well, the product can be used in the aircraft, automotive, typewriter, and other machine industries to mask parts during application and high temperature treatment of baked finishes and enamels. The sheets will perform equally well in similar masking operations in finishing electrical, radio, and electronic equipment. The ability of the sheet to resist cold is of great importance in connection with aircraft designed for high altitude flying, and in the locker industry for packaging foods and other perishables for long storage at low temperatures."

This quotation is immediately succeeded by the following: "While the foregoing advantages may be obtained using standard butadiene styrene copolymers as the impregnant for the sheet, the surprising discovery has been made that the tensile and internal strength is vastly improved if butadiene styrene copolymers are used having a higher than conventional ratio of styrene to butadiene. Heretofore, the usually available butadiene styrene copolymers, such as Buna S or G R S had a styrene content of about only 25 per cent by weight. In so far as this invention is concerned, however, it is preferred that the styrene content of the butadiene styrene copolymer range between 35 and 70 per cent by weight. The increased olefin content reduces the elastic properties and improves the plastic properties of the copolymer, thereby rendering the copolymer substantially superior as an impregnant for fibrous sheeting.

As we understand the foregoing, it definitely teaches that, prior to the entrance of appellants into the field, butadiene styrene copolymers having a styrene content of "about only 25 per cent by weight" were available from which there might have been obtained the advantages incident to the sheets developed by appellants, but appellants allege that a better product for the purposes stated results when the styrene content ranges between 35 per cent by weight and 75 per cent by weight. The specification states that "Creamed dispersions of butadiene styrene copolymer suitable for practicing the invention may be obtained commercially."

In the specification of the patent to Konrad et al., application (serial No. 334,574) for which appears to have been filed May 11, 1940, it is said: "It has now been found that the hitherto unknown products of the conjoint emulsion polymerization of butadiene and styrene, the styrene content of

which is between about 45% and about 70%, are distinguished by certain new and unexpected properties. The present invention is based upon the observation that an increase of the styrene content (within distinct limits) brings about an increase of plasticity and, in accordance therewith, of the workability of such products and, moreover, of solubility."

Various examples showing differing proportions of butadiene styrene are given, and four of the claims of the patent recite a range of styrene content "between about 47.5% and about 70%."

With respect to the Konrad et al. patent the Primary Examiner in his statement following the appeal to the board said: "* * * Since this patent shows the specific butadiene-styrene polymer in form of latex, which is to be used for any purpose for which natural rubber latex has been used, it is held that it is within the scope of any man skilled in the art to use this latex for the impregnation of fibrous products, so that the dried fibrous sheet will contain from 40 to 60% of impregnant solids. In the ordinary impregnation of fibre sheets with a latex, which varies in concentration from 30 to 50% or more, the fibres will usually absorb more than 40% of the latex solids."

In the brief for appellants it is said of the Konrad et al. patent: "This patent discloses a butadiene-styrene copolymer having a styrene content between about 45 and 70% and existing in the form of an emulsion. It further discloses that this copolymer, which is described as a new product, can be dissolved in organic solvents, such as benzene, without the necessity of subjecting the same to a breaking down process and hence can be directly employed for impregnating or coating purposes and the like."

With respect to the Paper Trade Journal reference, the Primary Examiner's statement following the appeal to the board reads: "The article in the 'Paper Trade J.' deals with the saturation of paper with any latex, including latex from butadiene-acrylic nitrile interpolymers. The use of this synthetic rubber latex is specifically described in page 31 [of the Journal]."

In the course of its decision the Board of Appeals said: "* * * the article in the 'Paper Trade Journal' discloses impregnation of paper with synthetic rubber latices. The specific latex employed is disclosed in Konrad et al. and this is apparently agreed to by appellants."

In the brief for appellants, their interpretation of the disclosures of the reference reads:

"* * * According to the reference the rubber latex used was always reduced to approximately 12½% solids, and in this form acted as a saturating medium. The usual amount of rubber deposited onto the paper fibers was between 20 to 30%, depending upon the end use of the processed material and type of saturating paper utilized. The reference goes on to mention that for shoe materials the percentage of solids deposited was invariably lower and more in the order of 15%.

"This reference also describes paper impregnation with synthetic latex and resin emulsions. The synthetic rubber latex mentioned is of the buna N (butadiene-acrylonitrile) type mixed with vinyl resins in various proportions. Plasticizers are employed for the synthetic resins which must be compatible with the type of synthetic rubber used. Also, according to the reference, plasticizers are essential for the synthetic rubber, which may be used alone, in order to retard stiffening of the product in freezing temperatures. Vulcanizing ingredients in the synthetic latex bath are favored. The reference also states that the chief drawback in the use of the Buna N latex is its tendency to migrate toward the surface of the paper during the drying operation, resulting in a poorly bound material.

"Other than the reference to the Buna N type of rubber latex, no clue is given as to the amount of butadiene or acrylonitrile present in the copolymer, nor does the article specify the extent to which the paper is saturated with the latex."

Appellants' interpretation of the Paper Trade Journal reference appears to be based, in part at least, upon two affidavits made by Dr. Vlon Neilan Morris, who was

connected with Industrial Tape Corporation, to which apparently the application here involved belongs, engaged in chemical research and development. There is also in the record an affidavit by Dr. Howard James Billings, who states that he is a research chemist associated with a company of consulting chemists, which is in substantial harmony with the affidavit of Dr. Morris.

We have studied and carefully considered the affidavits and the arguments relative to the Paper Trade Journal reference which seem to be based upon them.

It seems to us that the arguments are fairly answered in that part of the brief of the Solicitor for the Patent Office before us reading (note page references omitted as indicated by asterisks): "The examiner contended that essentially the same composition [as that of the Konrad et al. patent] was inherently disclosed in the Paper Trade Journal reference since the writer of this article used in the investigation reported the ordinary 'Buna N' produced in this country which contains from 30 to 50% of acrylic nitrile * * *. Appellants challenged that statement by presenting an affidavit of one Morris * * * in which the affiant states that at the time the article relied upon was written most 75% butadiene and 25% acrylonitrile 'Buna N' was composed of a variety using * * *. The source and authority for the affiant's statement is stated to be a book written by one Dr. Powers at about the time the Paper Trade Journal appeared in print (1942), from which it appears that although the most common copolymer contained about 25% of styrene or acrylonitrile, copolymers containing as high as 40% acrylonitrile were not uncommon * * *. Moreover, it should be noted that at the time appellants filed the application involved in this appeal (1944), such copolymers were readily available * * *. Under these circumstances, it is submitted that there is a reasonable basis in the record for the conclusion reached by the examiner * * * that copolymers containing acryl-ic nitrile in amounts within the range defined in the claims could have been and were used in the investigation reported in the Journal article, since such copolymers were old in the art and readily available commercially. In passing, it is necessary to state that the Board of Appeals did not rule specifically upon this issue.

"Although appellants admit that the Paper Trade Journal reference describes paper impregnated with a synthetic rubber of the type formed from copolymers of butadiene with styrene or acrylic nitrile * * * it is urged (1) that no clue is given as to the amount of butadiene or acrylic nitrile present in the copolymer, and (2) that the article does not specify the extent to which the paper is saturated with the synthetic rubber latex * * *.

"Contention (1) has been fully answered by the preceding paragraph. Contention (2) involves only a noninventive difference, i. e., a difference in degree only. As stated by the Board, differences in extent of impregnation involve no more than matters of degree and choice which would be apparent to the person skilled in the art * * *."

We may remark that even were we to conclude that rejection on the Paper Trade Journal standing alone would not be justified, it would not follow from this that the decision appealed from should be reversed. There was a clear-cut rejection by the Primary Examiner of all the appealed claims as presenting nothing patentable over the Konrad et al. patent standing alone, and the Board of Appeals expressed no disagreement with that finding.

Careful consideration has been given such matter relative to the Konrad et al. patent as appears in the affidavits of Messrs. Morris and Billings, but we cannot accept the statements as overcoming what seems to us to be the clearly expressed teaching of appellants' application as originally filed.

For the reasons indicated the decision of the Board of Appeals is affirmed.

Affirmed.